**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| DANIEL DAVID WILLIAMS,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | Case No. 4:17-cv-02764 |
| ) | |
| CITY OF ST. LOUIS, MISSOURI;  ) | |
| CORIZON HEALTH, INC., a Delaware  ) | **JURY TRIAL DEMANDED** |
| Corporation;  ) | |
| TAKISHA BOYD (DSN 6330) in her  ) | |
| individual capacity and official capacity as  ) | |
| a St. Louis Metropolitan Police  ) | |
| Department Detective;  ) | |
| and  ) | |
| DOES 1 – 20, in their individual capacities  ) | |
| as agents or employees of the City of St.  ) | |
| Louis and/or Corizon Health, Inc.;  ) | |
| ) | |
| Defendants.  ) | |

## COMPLAINT

1.     Daniel David Williams, an African-American man struggling with chronic homelessness, brings this lawsuit against the Defendants after enduring an eight-month period of abuse at the hands of St. Louis law enforcement officers and employees, who (1) beat and choked Mr. Williams unconscious, left him in the cold and caused his hospitalization; (2) falsely charged Mr. Williams with violating a municipal "nuisance" ordinance for having been beaten by the police; (3) falsely arrested Mr. Williams under the pretense of a non-existent interstate extradition warrant; and (4) unlawfully caged Mr. Williams in the St. Louis City Jail, where for **154 consecutive days** the Defendants all ignored and neglected Mr. Williams' severe medical needs.

2.     Five (5) months later, the City of St. Louis arrested Mr. Williams a *second* time and held him in its jail **for an additional 86 consecutive days** under the same conditions and with the

same deliberate indifference to Mr. Williams' severe medical needs, denying him necessary prescription medications, dietary accommodations, and access to legal resources in the law library.

3.      Mr. Williams brings this action for money damages pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of his rights under the Fourth Amendment to the United States Constitution, as made applicable to the States through the Fourteenth Amendment, against the City of St. Louis, St. Louis Metropolitan Police Detective Takisha Boyd (DSN 6330), presently unknown St. Louis City police and correctional officers in their official and individual capacities, Corizon Health, Inc., and its presently unknown medical personnel in their individual capacities

## JURISDICTION AND VENUE

4.      This is a civil rights action arising under 42 U.S.C. § 1983, 28 U.S.C. § 2201, *et seq.*, and the First, Fourth, and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

5.      This action also asserts Missouri state law claims for assault and battery against the Defendant SLMPD Officers Doe 1-4 and an alternative claim for negligence against Defendant Corizon Health, Inc. The Court can and should exercise supplemental jurisdiction over these claims, pursuant to 28 U.S.C. § 1367, as they are so related to the other claims in the action already under the Court's original jurisdiction and form part of the same case or controversy under Article III of the United States Constitution.

6.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because the Defendants are located in this District and the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

7.      Plaintiff Daniel David Williams is a citizen of the United States and a resident of the City of St. Louis, Missouri.

8.     Defendant City of St. Louis, Missouri, is an independent City and political subdivision existing under the laws of the State of Missouri and located within this judicial district.

9.     Defendant Corizon Health, Inc. is a for-profit corporation organized under the laws of the State of Delaware with its principal place of business in the State of Tennessee that provides medical care on behalf of the City of St. Louis within the St. Louis City Jail.

10.     Defendant Takisha Boyd (DSN 6330) is a sworn police detective for the St. Louis Metropolitan Police Department acting at all times relevant hereto under the color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of the City of St. Louis, State of Missouri. Defendant Boyd is sued in her individual and official capacity.

11.     Defendant Doe Police Officers 1-4 and 5-10 are presently unidentified individuals who were at all times relevant to this Complaint duly appointed and acting as sworn police officers for the St. Louis Metropolitan Police Department for the City of St. Louis, acting under the color of law, *to wit*, under color of the statutes, ordinances, regulations, policies, customs, and usages of the City of St. Louis, Missouri. The Defendant Doe Police Officers 1-4 and 5-10 are sued in their individual and official capacities.

12.     Defendant Doe Correctional Officers 1-5 are presently unidentified individuals who were at all times relevant to this Complaint duly appointed and acting as correctional officers, jail employees, and/or other individuals affiliated with the City of St. Louis, acting under the color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of the City of St. Louis, Missouri. The Defendant Doe Correctional Officers 1-5 are sued in their individual and official capacities.

13.      Defendant Doe Corizon Employees 1-5 are employees, agents, contractors, and/or officials of Defendant Corizon Health, Inc. working within the St. Louis City Jail, acting under the

direction and control of Defendant Corizon Health, Inc. and/or the City of St. Louis. The Defendant Doe Corizon Employees 1-5 are sued in their individual and official capacities.

14.     Upon information and belief, all individual Doe Defendants listed in Paragraphs 14-16 reside within this judicial district.

## FACTS

15.     Plaintiff Daniel David Williams is a 53-year old African-American resident of the City of St. Louis, Missouri who at all relevant times suffered from chronic homelessness, including during the period of November 2015 to April 2017.

16.     Sometime shortly before Thanksgiving in late November 2015, Mr. Williams was standing on the sidewalk on Locust Street near 14th Street with his friend Don (last name unknown).

17.     Three St. Louis Metropolitan Police Department vehicles approached the area and Defendant Doe Police Officers 1-4 got out of the vehicles and confronted Mr. Williams and his friend.

18.     Defendant Doe Police Officers 1-4 grabbed Mr. Williams and pushed him up against one of the police vehicles, struck Mr. Williams in the torso multiple times, and placed Mr. Williams in a chokehold, causing Mr. Williams to temporarily lose consciousness.

19.     Defendant Doe Police Officers 1-4 told Mr. Williams's friend, Don, to leave the area, and when Don told the officers he was not going to leave Mr. Williams, the officers arrested Don as well.

20.     The Defendant Doe Police Officers 1-4 cuffed Mr. Williams's hands behind his back and briefly placed him in one of the police cars, where Mr. Williams stated "good, now you have me on camera being in this car."

21.     Mr. Williams's next memory is of riding in the back of the police car as it drove off.

22.     On information and belief, the Defendant Doe Police Officers 1-4 moved Mr. Williams to a different location and further struck and choked Mr. Williams before leaving him out in the cold.

23.     Mr. Williams's next memory is of regaining consciousness in St. Louis University Hospital, where he remained hospitalized for several days due to the injuries caused by the Defendant Doe Police Officers 1-4.

24.     Mr. Williams was unable to speak when he awoke, due to injuries to his neck and throat caused by the chokehold used by the Defendant Doe Police Officers 1-4.

25.     At the St. Louis University Hospital, a nurse informed Mr. Williams that someone had seen Mr. Williams lying in the cold somewhere and that an ambulance had brought Mr. Williams to St. Louis University Hospital, and that he had been unconscious for several days, including over the Thanksgiving holiday.

26.     The nurse also told Mr. Williams that the hospital had to treat him for hypothermia in addition to his other physical injuries.

27.     The actions of Defendant Doe Police Officers 1-4 caused Mr. Williams to suffer chest and rib pains, and the inability to speak for approximately two weeks.

28.     Upon Mr. Williams's release from the hospital, he took the city bus to a homeless shelter on 12th and Park in St. Louis and tried to inform the shelter's coordinator, Hence "Sarge" Fordland, about the attack. Because Mr. Williams could not speak, he had to use a pen and paper to communicate what had happened to "Sarge."

29.     A few days later, Mr. Williams saw his friend Don, who told Mr. Williams that he

had witnessed the Defendant Doe Police Officers 1-4 choke and strike Mr. Williams before arresting the two men.

30.     Don also informed Mr. Williams that he saw an unknown witness taking a video of the incident on their cell phone.

31.     Mr. Williams contacted DeAndre Commons, a Homeless Case Management Assistant at Affinia Healthcare and informed him of the incident and of his injuries. Mr. Commons scheduled a doctor's appointment for Mr. Williams to follow up to have his injuries examined. During that exam, the Afinia doctors informed Mr. Williams that his larynx was swollen and that he had bruising on his chest and ribs.

### December 10, 2015 Arrest

32.     Up to and including December 10, 2015, Mr. Williams continued to suffer rib and chest pains resulting from the above-described attack. At this point in time, his ability to speak had begun to return, but his voice was still scratchy and impeded due to the injuries to his larynx.

33.     On the evening December 10, 2015, Mr. Williams was in the parking lot of the Christ Church Cathedral located at Olive and Tucker in downtown St. Louis, along with several acquaintances. A St. Louis City police car approached, as well as an open-air police cart and two SLMPD officers on bicycles.

34.     The six (6) Defendant Doe Police Officers 5-10 who arrived asked all of the individuals in the group for identification, and told them they were "desecrating the church" by drinking alcohol in the parking lot.

35.     Mr. Williams began to comply with the officers' demands by pulling out his wallet. Immediately, Defendant Doe Police Officer 5 grabbed Mr. Williams's wallet and searched through it, removing Mr. Williams's Missouri photo identification, as well as Mr.

Williams's expired Michigan driver's license.

36.     Another Defendant Doe Police Officer 6 then told Mr. Williams "you have warrants," cuffed Mr. Williams's hands behind his back, and put him in the SLMPD patrol cart, which transported Mr. Williams to the St. Louis City Justice Center (the "City Jail").

37.     Upon reaching the City Jail, Mr. Williams overheard a conversation between the arresting officers and jail administrators about a problem with the City's ability to properly book Mr. Williams. The police officers left Mr. Williams with the City Jail administrators and said to each other, "let them fix it," referring, on information and belief, to the City Jail's administrators and the purported booking problem.

38.     Mr. Williams was not booked or arraigned on any charges at that time.

39.     Mr. Williams was then locked in the City Jail.

40.     A few days later, Mr. Williams appeared before a judge via closed circuit television, who denied him bail and told him that he was being held pursuant to a warrant and/or extradition hold from the State of Michigan. Mr. Williams did not receive an appointed lawyer at the hearing.

41.     Mr. Williams never saw any documentation or proof of the alleged extradition warrant from Michigan, and was never told what the alleged offense was he supposedly committed in Michigan.

42.     Mr. Williams then languished in the City of St. Louis Justice Center for 154 days without a hearing until he was released on May 24, 2016.

43.     At no time during his 154-day detention was Mr. Williams ever advised of any charges pending against him in Michigan or elsewhere.

**The Defendants Ignore Mr. Williams' Significant Medical Needs**

44.     Upon being locked in the St. Louis City Jail, a nurse visited Mr. Williams inside the City Jail, at which time Mr. Williams informed her that he had been attacked by the Defendant Doe Police Officers 1-4, and that he continued to suffer pain in his throat, chest, and ribs as a result.

45.     Mr. Williams also told the nurse that he had been diagnosed with diabetes, high blood pressure, and severe mental health conditions, all of which require careful and regular pharmaceutical management and treatment from medical professionals.

46.     Mr. Williams told the nurse that his medical insurance was provided through Gateway to Better Health, that his insurance card was in his wallet that the City Jail was holding. Mr. Williams also informed the nurse that his primary care doctors were located at Affinia Healthcare, and that his specialists were located at Barnes Jewish Hospital.

47.     Mr. Williams requested his necessary prescription medication at that time, and the nurse informed him he could not receive medicine until Mr. Williams saw the doctor inside the City Jail.

48.     About one week later, Mr. Williams saw the City Jail doctor, who performed a physical exam. Mr. Williams signed a medical release form at that time for the City Jail medical staff to obtain his medical records and prescription information from Mr. Williams's care providers.

49.     That same day, Mr. Williams saw a psychiatrist in the jail, Defendant Doe Corizon Psychiatrist, and informed her about his serious mental health diagnoses and all the medications Mr. Williams's own doctors had prescribed him.

50.     Defendant Doe Corizon Psychiatrist told Mr. Williams that the City Jail and

Corizon would not give him his prescribed mental health medication because it was "too expensive" and that one of them, Seraquel, was "considered a narcotic."

51.     Mr. Williams told Defendant Doe Corizon Psychiatrist that he knew Seroquel is not classified as a narcotic.

52.     A basic search of public information readily reveals that Seroquel is not classified as a narcotic.

53.     Additionally, Mr. Williams informed Defendant Doe Corizon Psychiatrist that his primary doctors told him not to take certain other medications, including Zoloft. Later that evening, the City Jail brought Mr. Williams the wrong blood pressure medications and Zoloft, all of which Mr. Williams knew would not treat his physical and mental conditions.

54.     Fearing that he had to take the given medications or he would not receive further care, Mr. Williams took the medications provided him at the City Jail. They did not work, but instead made his blood pressure more volatile and his mental symptoms become worse and worse.

55.     The following month, Mr. Williams visited Defendant Doe Corizon Psychiatrist, and again informed her that he was not receiving the proper prescription medication. Mr. Williams reported to Defendant Doe Corizon Psychiatrist that he had begun suffering from night terrors, hearing voices, and had been experiencing suicidal thoughts due to the Defendants' refusal to give him his proper prescribed medication and due to Defendants giving him the wrong medication.

56.     Defendant Doe Corizon Psychiatrist *again* told Mr. Williams that his appropriate medication "cost too much" and that "we don't allow inmates to take Seraquel." Defendant Corizon Psychiatrist told Mr. Williams that she would increase his dosage of Zoloft instead, and

Mr. Williams reminded Defendant Doe Corizon Psychiatrist that his doctors told him that increased Zoloft would not work to relieve his symptoms.

57.     Nevertheless, throughout Mr. Williams's entire stay in the City Jail, the Corizon and City Jail employees continued to give Mr. Williams the wrong medications, and Mr. Williams's mental health symptoms and high blood pressure continued to get worse and worse.

58.     At one point, Mr. Williams wrote to his medical coordinator at Affinia Healthcare, Venice Graves, and also to his case manager at St. Patrick Center, requesting that they notify the City Jail about Mr. Williams's proper medications.

59.     Venice Graves contacted employees of Defendant City of St. Louis and Defendant Corizon and sent to them a list of Mr. Williams's proper medications, which included Seroquel.

60.     Mr. Williams's case manager from St. Patrick Center also sent a list of Mr. Williams's medications directly to him, which Mr. Williams gave to the Defendant Doe Corizon Psychiatrist and Defendant Doe Corizon Physician. The psychiatrist reviewed the list in front of Mr. Williams and again told Mr. Williams "we don't allow inmates to take Seroquel" because it "costs too much," and she refused to give Mr. Williams any of the other listed medications as well.

61.     At all relevant times during Mr. Williams' 154-day imprisonment, Mr. Williams repeatedly requested that the City Jail and its health care provider Corizon Health provide the correct blood pressure and mental health medication necessary to manage Mr. Williams's physical and mental diagnoses.

62.     At all relevant times during Mr. Williams's 154-day imprisonment, the City Jail employees and Corizon employees ignored, refused, and otherwise denied Mr. Williams's

reasonable requests for necessary medical care, and further gave Mr. Williams the *wrong* medications, which exacerbated or, at best, had no effect on Mr. Williams's illnesses.

63.     At all relevant times, the Doe Defendants working as Corizon employees and St. Louis City Jail employees were acting according to policies, training and/or failure to train, and customs of Defendant Corizon and Defendant City of St. Louis, and these policies reflected a deliberate indifference to the needs of Mr. Williams as a pretrial detainee.

64.     As a result of Defendants' policies and procedures to deprive Mr. Williams his appropriate medication for his mental conditions from the City, Mr. Williams experienced psychological trauma including hallucinations, nightmares, violent tendencies, and suicidal ideations throughout his incarceration.

65.     Additionally, because the Defendants deprived Mr. Williams his appropriate medication for his physical conditions, Mr. Williams' blood pressure levels became volatile and caused Mr. Williams frequent dizziness, pain, anxiety, and physical distress.

66.     At one point during his imprisonment, Mr. Williams suffered an emergency medical episode he believed to be a heart attack due to the Defendants' refusal to provide him the proper blood pressure medication.

67.     During this emergency heart episode, Mr. Williams informed the City Jail staff that he was having chest pains, that his blood pressure was elevated, and that he believed he was having a heart attack. Mr. Williams was transported to the City Jail infirmary.

68.     At the City Jail infirmary, the City Jail and Corizon staff placed Mr. Williams in a cell and informed Mr. Williams that no doctor was on staff at that time.

69.     Mr. Williams immediately began making repeated requests to be taken to a hospital to be seen by a doctor because he thought he was having a heart attack, and a Defendant

Doe Correctional Officer 1 and Defendant Doe Corizon Nurses 2-3 ignored Mr. Williams's pleas, leaving him in the infirmary cell alone, where they continued to ignore him for several hours.

70.     Despite being placed in the infirmary, not only did the Defendants continue to deprive Mr. Williams the treatment and medications necessary to manage his physical and mental conditions, they did not provide any treatment for Mr. Williams's heart emergency other than to merely "observe" Mr. Williams.

71.     While in the infirmary for his heart episode, on information and belief, no medical doctor was called to provide treatment to Mr. Williams.

72.     During this heart episode, Mr. Williams endured extreme chest and arm pain, shortness of breath, anxiety, and fear for his life and his safety.

73.     After suffering approximately three to four hours with his heart attack symptoms with no medical care whatsoever, Defendants Doe Corizon Nurses 2-3, and Doe Correctional Officer 1 sent Mr. Williams back to his cell.

**Pending St. Louis City Charges**

74.     During Mr. Williams's imprisonment, several court continuances appeared in the City's court record associated with a municipal charge filed against Mr. Williams, including an order for a bench warrant on January 21, 2016 resulting from Mr. Williams' failure to appear.

75.     Despite his detention in the City Jail, just a few blocks away, Mr. Williams never received service of a summons or a warrant during his incarceration and remained unaware of the pending municipal cases.

76.     On April 21, 2016, Mr. Williams filed a *pro se habeas corpus* petition in this Court, which was forestalled because Mr. Williams accidentally named an improper defendant.

77.     Finally, on May 24, 2016—after the City had imprisoned Mr. Williams for nearly six months without an attorney, without possibility of bail, without his necessary medications, and without due process—Mr. Williams was finally released.

78.     Upon his May 24, 2016 release, the City finally booked and arraigned him on the municipal nuisance charge.

79.     Thereafter, Mr. Williams had to retain an attorney and expend personal time to defend himself against the false, baseless charge in the St. Louis City Municipal Court.

80.     Mr. Williams, through counsel, filed a Motion to Dismiss the St. Louis City Municipal "nuisance" charge, alleging deprivation of his statutory and Constitutional rights, including the right to a speedy trial.

81.     On the date scheduled for hearing on Mr. Williams' Motion to Dismiss, the City elected to *nolle prosequi* the charge against Mr. Williams before the hearing was called to order.

**Post-Incarceration Corrective Measures**

82.     Upon release from the City Jail in late May 2016, Mr. Williams visited his primary physicians, who examined Mr. Williams and told Mr. Williams that because he was given the wrong medication in the City Jail, his blood pressure had become volatile while he was imprisoned.

83.     At that time, Mr. Williams restarted his proper medication and slowly regained control of his physical and mental health symptoms.

84.     Additionally, after his release in late May 2016, Mr. Williams obtained full-time employment with a recycling center through St. Patrick Center, and began saving up money to obtain permanent housing.

**October 25, 2016 Arrest**

85.     In the evening of October 25, 2016, on his way after work to sign in for temporary shelter at Peter and Paul, Mr. Williams was standing outside St. Patrick Center on the sidewalk in downtown St. Louis, talking to a friend, when Defendant Doe Police Officers 11-12 approached on their police bicycles.

86.     The Defendant Doe Police Officers 11-12 told Mr. Williams and his friend they were trespassing.

87.     Mr. Williams stated to the officers that they were "were just passing through."

88.     Defendant Doe Police Officers 11-12 then asked both Mr. Williams and his friend for identification, and they complied.

89.     Defendant Doe Police Officers 11-12 ran the friend's name and stated it was "clear."

90.     Defendant Doe Police Officers 11-12 then ran Mr. Williams's name and stated that Mr. Williams had a warrant from the state of Michigan. Mr. Williams stated that this mistake had already happened to him once before, and informed the SLMPD officers they were arresting the wrong person.

91.     Defendant Doe Police Officers 11-12 ignored Mr. Williams's statements and did not endeavor to determine whether Mr. Williams was the appropriate person for arrest at that time.

92.     Defendant Doe Police Officers 11-12 then cuffed Mr. Williams's hands behind his back, and radioed an SLMPD transport van to send Mr. Williams to the City Jail for a second time.

93.     On October 27, 2016 the City of St. Louis Circuit Court entered an Order that

"No Bond" would be allowed for Mr. Williams's release.

94.     The next day, October 28, 2016, Mr. Williams appeared before a judge via closed circuit television, at which time the judge advised Mr. Williams he was being held pursuant to a Michigan warrant and would not be allowed bail.

95.     At a later date, Mr. Williams saw the same judge at a court appearance and told the judge that Mr. Williams had evidence that he had already been mistakenly arrested and released for this very same charge one year prior, but the judge told Mr. Williams "there isn't anyone here to hear your evidence" in the courtroom.

96.     For 86 days, Mr. Williams was held in the City Jail under a "Felony Fugitive from Another State" charge, but was shown no documentation regarding the underlying charge.

97.     In the charging documents submitted to the court, Defendant Detective Takisha Boyd by sworn statement alleged that Mr. Williams had committed the offense of sexual assault in the state of Michigan in January 2016.

98.     Had Defendant Boyd conducted a modicum of investigation prior to issuing her sworn probable cause statement, Defendant Boyd would have learned that, as set forth above, Mr. Williams could not possibly have committed that crime—or *any* crime—in the state of Michigan in January 2016 because he was locked inside the St. Louis City Jail on the date alleged.

99.     Mr. Williams, through his public defender, filed a Motion to Dismiss on the basis that Defendant Boyd's probable cause statement was false, and a judge granted Mr. Williams's Motion to Dismiss on January 19, 2017.

100.     Mr. Williams was released from the City Jail shortly thereafter.

**Denial of Physical and Mental Health Care for the *Second Time***

101.     Just as before, Mr. Williams notified the Doe Defendants working as Corizon employees and St. Louis City Jail employees that he had physical and mental health conditions that required regular medication.

102.     For a *second time*, the very same doctors and nurses in the City Jail refused to provide Mr. Williams his proper, necessary, and prescribed medications.

103.     For a *second time*, the very same doctors and nurses in the City Jail gave Mr. Williams the wrong medications, which were ineffective and which further exacerbated his high blood pressure problems and his mental health problems.

104.     When Mr. Williams asked Defendant Doe Corizon Nurse 4 why the City Jail would not give Mr. Williams his proper psychiatric medication to treat his schizophrenia, Defendant Doe Corizon Nurse 4 told Mr. Williams that "your medication costs too much" and that it was "not allowed in the City Jail."

105.     Mr. Williams later asked Defendant Doe Corizon Psychiatrist, for his proper, necessary, and prescribed psychiatric medications, Defendant Doe Corizon Psychiatrist told Mr. Williams the same thing she had told him the first time Mr. Williams was in the jail: "Your medication costs too much" and is "not allowed in the City Jail."

106.     Mr. Williams then asked Defendant Doe Correctional Officer 2 why the medical staff in the City Jail would not provide him his proper, necessary, and prescribed psychiatric medications, and Defendant Doe Correctional Officer 2 replied that the City Jail "does not give inmates Seroquel because it's a narcotic," yet Mr. Williams' medication was not classified as a narcotic.

107.     At all relevant times during Mr. Williams's 86-day imprisonment, the Doe

Defendants working as City Jail employees and Corizon employees *again* ignored, refused, and otherwise denied Mr. Williams' reasonable requests for necessary medical care.

108.    At all relevant times, the Doe Defendants working as Corizon employees and St. Louis City Jail employees were acting according to policies, training and/or failure to train, and customs of Defendant Corizon and Defendant City of St. Louis, which together constituted a deliberate indifference to the physical and mental health needs of Mr. Williams as a pretrial detainee.

109.    As a result of Defendants' policies and procedures to deprive Mr. Williams his appropriate medication for his mental conditions from the City, Mr. Williams *again* experienced psychological trauma including hallucinations, nightmares, violent tendencies, and suicidal ideations throughout his incarceration.

110.    Additionally, because the Defendants *again* deprived Mr. Williams his appropriate medication for his physical conditions, Mr. Williams' blood pressure levels *once again* became volatile and caused Mr. Williams frequent dizziness, severe headaches, chest and body pain, anxiety, and physical distress.

111.    The City of St. Louis and Corizon Health subjected Mr. Williams to a substantial risk of harm and injury by failing to provide adequate medical care and by failing to implement adequate mechanisms to ensure a sufficient medical care delivery system.

112.    Staff at the City Jail are selective and arbitrary in determining what medical conditions warrant medical evaluation and treatment and those that do not. As a result, Mr. Williams's repeated complaints and requests for medical attention were simply ignored, resulting in the exacerbation of serious physical and mental health conditions.

**Denial of Access to the Law Library and Deliberate Indifference to Rights**

113.    While in the City Jail for the second time, a Defendant Doe Correctional Case Worker would not let Mr. Williams use the law library despite his repeated requests, telling him that he "was being extradited so [he] would be gone in 90 days."

114.    Mr. Williams submitted a grievance (called an "RR Sheet"), which the City Jail claimed they never received because it was placed in the "wrong box."

115.    Mr. Williams resubmitted the grievance to the Defendant Doe Correctional Case Worker's supervisor, Defendant Doe Correctional Supervisor, who never responded to the grievance.

116.    When Mr. Williams asked the Defendant Doe Correctional Case Manager again for access to the law library, as well as to receive his proper medications, Defendant Doe Correctional Case Manager told Mr. Williams that he "would be gone in 90 days" and that it was "not [her] problem."

**Disruption of Life and Familial Relationships**

117.    Upon release from the City Jail, Mr. Williams was devastated to learn that while he was incarcerated, his mother had suffered a stroke and his sister had passed away. Mr. Williams missed her funeral due to his wrongful imprisonment.

118.    Mr. Williams's brother informed him that he had attempted to contact Mr. Williams in the City Jail, who informed the brother that the City Jail "didn't have" Mr. Williams in the jail at that time, even though they *were* incarcerating Mr. Williams.

119.    *Again*, Mr. Williams had to work with his primary care physicians to regain control of his physical and mental health conditions.

120.    As a result of the second wrongful incarceration, Mr. Williams lost his employment

and remained homeless for several months.

**COUNT I**

**(Fourth Amendment Excessive Force Claim Cognizable Under 42 U.S.C. § 1983
Against Individual Defendant Doe Police Officers 1-4)**

121.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

122.    The conduct of the Defendant Doe Police Officers 1-4 as described above deprived Mr. Williams of his right to be secure in his person against unreasonable seizures as guaranteed to Mr. Williams under the Fourth Amendment to the United States Constitution and Williams' right not to be deprived of life, liberty, or property without due process of law.

123.    At no point during his encounter with Defendant Doe Police Officers 1-4 in late November, 2015, did Plaintiff resist arrest or otherwise engage in combative behavior with the police.

124.    Defendant Doe Police Officers 1-4, while acting under color of law, utilized excessive and unreasonable force in effectuating the arrest of Mr. Williams.

125.    As a direct and proximate result of the unlawful conduct of Defendant Doe Police Officers 1-4, Daniel Williams was caused to suffer severe physical pain and mental anguish.

126.    Additionally, as a direct and proximate result of the actions of the Defendant, Mr. Williams incurred medical expenses.

WHEREFORE, the Plaintiffs pray for judgment against Defendant Doe Police Officers 1-4 individually for general, special, and punitive damages, in an amount to be proven at trial, for costs and expenses, his reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and for such other relief as the Court may deem just and proper under the circumstances.

## COUNT II
**(Fourth Amendment Due Process Claim Cognizable Under 42 U.S.C. §1983 Against Defendant Doe Police Officers 5-10, Defendant Detective Takisha Boyd, and Defendant City of St. Louis)**

127.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

128.    The Fourth and Fourteenth Amendment's Due Process and Equal Protection Clauses have long prohibited the prolonged and indefinite imprisonment of persons without providing them any meaningful legal process through which they can seek redress.

129.    Additionally, the Fourth and Fourteenth Amendment grant in every person a right to be free from unlawful seizure.

130.    The conduct of Defendant Doe Police Officers 5-10 in arresting and detaining Mr. Williams without a warrant for 154 days constitutes a violation of Mr. Williams's Fourth and Fourteenth Amendment right, and said conduct was the direct and proximate cause of the harm and damages Mr. Williams suffered as described herein.

131.    Further, Defendant Detective Takisha Boyd, in signing a sworn affidavit for the arrest of Mr. Williams which contained false information, did knowingly, or with reckless disregard for the truth, submit to the neutral magistrate an affidavit containing a false material statement that Mr. Williams committed a crime in Michigan at a time the City of St. Louis had Mr. Williams in its own custody, the result of which caused the arrest of Mr. Williams in violation of his due process rights under the Fourth and Fourteenth Amendment.

132.    The conduct of the Defendants as described above in detaining Mr. Williams for 154 days in the City Justice Center without informing him of the charge against him and without providing him a hearing deprived Mr. Williams of his right to due process as guaranteed to

Williams under the Fourth Amendment to the United States Constitution, extended to the States by the Fourteenth Amendment.

133.    Mr. Williams suffered damages pursuant to Defendant City of St. Louis's violation of his rights under the Fourteenth Amendment, including but not limited to: being seized and deprived of his freedom; being detained in custody for a total of 154 days; embarrassment; hopelessness; inhumane jail conditions; fear; apprehension; depression; anxiety; consternation; emotional distress; violation of his constitutional rights; interference with his professional and employment relationships; loss of employment opportunities; lost time; and loss of faith in society.

WHEREFORE, the Plaintiffs pray (1) for judgment against Defendant Doe Police Officers 5-10 for general, special, and punitive damages, in an amount to be proven at trial, for costs and expenses, his reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; (2) for judgment against Defendant Detective Takisha Boyd for general, special, and punitive damages, in an amount to be proven at trial, for costs and expenses, his reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; (3) for judgment against Defendant City of St. Louis for general damages, in an amount to be proven at trial, for costs and expenses, his reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and (4) for such other relief as the Court may deem just and proper under the circumstances.

## COUNT III
### (Fourteenth Amendment Deliberate Indifference Claim Cognizable under 42 U.S.C. §1983 against Corizon Doe Defendants and City Correctional Doe Defendants)

134.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

135.    The conduct of Defendant Doe Correctional Psychiatrist, Defendant Doe Correctional Physician, Defendant Doe Correctional Nurses 1-4, and the Defendant Doe

Correctional employees, as described above in detaining Mr. Williams for 154 days in the City Justice Center without providing adequate or appropriate medical care to Mr. Williams as a pretrial detainee deprived Mr. Williams of his right equal protection as guaranteed to Williams under the Fourteenth Amendment to the United States Constitution.

136.   The conduct of Defendant Doe Correctional Psychiatrist, Defendant Doe Correctional Physician, Defendant Doe Correctional Nurses 1-4, and the Defendant Doe Correctional employees inside the City Jail was done with deliberate indifference to the objectively reasonable medical needs of Mr. Williams.

137.   The deliberate indifference of Defendant Doe Correctional Psychiatrist, Defendant Doe Correctional Physician, Defendant Doe Correctional Nurses 1-4, and the Defendant Doe Correctional employees directly and proximately caused harm to Mr. Williams that was sufficiently serious and a substantial risk to his health and safety, and caused him damage of physical pain and mental anguish.

WHEREFORE, Mr. Williams prays for judgment against Defendant Doe Correctional Psychiatrist, Defendant Doe Correctional Physician, Defendant Doe Correctional Nurses 1-4, and the Defendant Doe Correctional employees individually for general, special, and punitive damages, in an amount to be proven at trial, for costs and expenses, his reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and for such other relief as the Court may deem just and proper under the circumstances.

### COUNT IV
**(Fourteenth Amendment Deliberate Indifference Claim Cognizable under 42 U.S.C. § 1983 Against the City of St. Louis and Corizon Health, Inc.)**

138.   Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

139.    The conduct of Defendant City of St. Louis and Defendant Corizon Health, Inc. and their employees as described above—done pursuant to those Defendants' policies, procedures, training and/or failure to training—in detaining Mr. Williams for 154 days in the City Justice Center without providing adequate or appropriate medical care to Mr. Williams deprived Mr. Williams of his right to basic human dignity and to be free from cruel and unusual pretrial conditions, as guaranteed to Williams under the Fourteenth Amendment to the United States Constitution.

140.    The Defendant City of St. Louis and its contracted healthcare provider Defendant Corizon have been and continue to be aware of all the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct. It should be obvious to the Defendant City of St. Louis and Defendant Corizon and to any reasonable person that the conditions imposed on Mr. Williams for months upon months caused tremendous mental anguish, physical harm, pain, and suffering.

141.    The polices, procedures, customs, usages, failure to train, and failure to implement corrective measures of Defendant City of St. Louis and Defendant Corizon directly and proximately caused harm to Mr. Williams that was sufficiently serious and constituted a substantial risk to his health and safety.

142.    As a direct and proximate result of the unlawful of Defendants, which was done pursuant to Defendants' policies, procedures, training and/or failure to train, Daniel Williams was damaged.

WHEREFORE, the Plaintiffs pray for judgment against the City of St. Louis and Corizon Health, Inc., jointly and severally, for general, special, and punitive damages, in an amount to be proven at trial, for costs and expenses, their reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and for such other relief as the Court may deem just and proper under the circumstances.

## COUNT V
**(Municipal Liability under 42 U.S.C. § 1983 Against Defendant City of St. Louis)**

143.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

144.    There exist within the City of St. Louis and its St. Louis Metropolitan Police Department such policies or customs, practices and usages so pervasive that they constitute department policy, which caused the constitutional deprivations suffered by Mr. Williams as set forth more fully above.

145.    At all times relevant to this Complaint, Defendants Doe Police Officers 1-4, as police officers of the SLMPD, were acting under the direction and control of the SLMPD and pursuant to its policies or customs, practices and usages.

146.    At all relevant times, the policies or customs, practices and usages of the SLMPD were set by the City of St. Louis who is responsible for making policy of the Police Department, its officers and operations.

147.    The policies, customs, practices and usages that exist include, but are not limited to, the following:

   a.    To hit, strike, punch, throw, choke, or otherwise use excessive force against citizens, without regard for the need for the use of force, or without regard for the legality of its use; and

   b.    To fail to adopt and maintain an effective early warning system designed to identify repeatedly deviant officers and then to act to address and correct the deviance.

148.    At all times relevant, the City of St. Louis was aware, or should have been aware, of the practice of improperly using force; of using excessive force in arresting or detaining; of using a "chokehold" or other choking maneuver against an individual; and of failing to adopt and maintain

an early warning system to identify repeatedly deviant and violent officers and failing to then act to address and correct their deviance.

149.    The City of St. Louis's failure to correct or remove these polices, customs, practices and usages directly and proximately caused the harm Mr. Williams suffered when Defendant Doe Police Officers 1-4, under color of law and pursuant to those policies, customs, practices, and usages, used unlawful excessive force on Mr. Williams (see Count I, *supra*).

150.    As a direct and proximate result of the policies, customs, practices and usages of the SLMPD as described above, Mr. Williams suffered injuries and damages, including but not limited to: being seized and deprived of his freedom; being detained in custody; suffering pain from being beaten; suffering pain and traumatic injuries to his neck and larynx from being placed in a chokehold; fear, apprehension, depression, anxiety, consternation and emotional distress; violation of his constitutional rights; lost time; lost money; and loss of faith in society.

151.    If Mr. Williams prevails, he is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Daniel Williams prays for judgment against Defendant City of St. Louis for compensatory damages in an amount which is fair and reasonable, plus costs of this action, attorneys' fees, and for such other and further relief as this Court deems fair and appropriate under the circumstances.

### COUNT VI
**(Missouri Common Law Assault Against Defendant Doe Police Officers 1-4)**

152.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

153.    As more fully set forth above, Defendant Doe Police Officers 1-4 intentionally used

their department issued batons, hands, fists, knees and/or feet without justification causing injuries and a reasonable apprehension of harm to Williams.

154.   As a direct and proximate result of the unlawful conduct of Defendants described above, Daniel Williams was caused to suffer severe pain and mental anguish.

155.   Additionally, the actions of Defendants caused or contributed to cause Plaintiff to incur medical expenses.

WHEREFORE**,** the Plaintiffs pray for judgment against the individual Defendant Doe Police Officers 1-4, jointly and severally, in an amount to be determined at trial together with such other and further relief as the Court deems just and proper under the circumstances.

<u>COUNT VII</u>
**(Missouri Common Law Battery Claim Against Defendant Doe Police Officers 1-4)**

156.   Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

157.   As more fully set forth above, Defendant Doe Police Officers 1-4 intentionally used their department issued batons, hands, fists, knees and/or feet without justification to cause contact with Mr. Williams for the purpose of causing injuries and a reasonable apprehension of harm to Mr. Williams.

158.   As a direct and proximate result of the unlawful conduct of Defendants described above, Daniel Williams was caused to suffer severe pain and mental anguish.

159.   Additionally, the actions of Defendants caused or contributed to cause Plaintiff to incur medical expenses.

WHEREFORE**,** the Plaintiffs pray for judgment against the individual Defendant Doe Police Officers 1-4, jointly and severally, in an amount to be determined at trial together with

such other and further relief as the Court deems just and proper under the circumstances.

## COUNT VIII – ALTERNATIVE TO COUNTS III AND IV
### (Missouri State Law Negligence Claim Against Defendant Corizon Health, Inc. in the Alternative to Counts III and IV)

160.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

161.    Alternative to Counts III and IV, Defendant Corizon Health and its employees owed to Mr. Williams a duty of reasonable care in providing him proper medical care.

162.    Alternative to Counts III and IV, Defendant Corizon Health and its employees breached that duty when they refused to give Mr. Williams his proper prescription medication and further when they gave Mr. Williams the incorrect medication.

163.    Alternative to Counts III and IV, as a direct and proximate result of the breach of duty by Defendant Corizon Health and its employees, Mr. Williams suffered harm that was sufficiently serious and was a substantial risk to his health and safety.

164.    Alternative to Counts III and IV, as a direct and proximate result of the unlawful conduct of Defendant Corizon and its employees, which was done pursuant to Defendants Corizon's policies, procedures, training and/or failure to train, Daniel Williams was damaged.

WHEREFORE, Mr. Williams prays in the alternative to Counts III and IV for judgment against the Defendant Corizon Health, Inc. and its employees, jointly and severally, for general, special, and punitive damages, in an amount to be proven at trial, for costs and expenses, their reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and for such other relief as the Court may deem just and proper under the circumstances.

## FINDER OF FACT

165.    Plaintiff demands a jury trial of all issues properly triable by jury.

Dated:  November 24, 2017                    Respectfully submitted,

                                             By: /s/  Nathaniel R. Carroll
                                                  Blake A. Strode (MBE #68422MO)
                                                  Thomas B. Harvey (MBE #61734MO)
                                                  Michael-John Voss (MBE #61742MO)
                                                  Nathaniel R. Carroll (MBE #67988MO)
                                                  ARCHCITY DEFENDERS, INC.
                                                  1210 Locust Street, 2nd Floor
                                                  St. Louis, MO 63103
                                                  855-724-2489 ext. 1012
                                                  314-925-1307 (fax)
                                                  bstrode@archcitydefenders.org
                                                  tharvey@archcitydefenders.org
                                                  mjvoss@archcitydefenders.org
                                                  ncarroll@archcitydefenders.org


                                             and

                                             KODNER WATKINS, L.C.

                                             By: /s/   Michael D. Schwade
                                                  ALBERT S. WATKINS, MO34553
                                                  MICHAEL D. SCHWADE, MO60862
                                                  7800 Forsyth Blvd., 7th Floor
                                                  St. Louis, Missouri 63105-3758
                                                  (314) 727-9111
                                                  (314) 727-9110 Facsimile
                                                  albertswatkins@kwklaw.net
                                                  mschwade@kwklaw.net

                                             *Attorneys for Plaintiff Daniel Williams*